**John S. PRASKAC, et al., Petitioners,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1996.

Decided Sept. 23, 1996.

---

John Stember, for Petitioners.

Norina K.S. Stone, Assistant Counsel, for Respondent.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

John S. Praskac, Blair T. Kranch, Tommy J. Vadyak, Micheal D. Chromiak, Glenn Wehr, James Lawall, Raymond Kershetsky, John Collins, Luther Leitzel, Louis Horvath, Bruce Eberts, Thomas Moyer, Richard Gernert, Anthony Mongi, Joseph Zelinsky, Herman C. Osenback, Jr., Edward Nyseth, Larry Sabol, Thomas Porambo, Scott Konstas, Foster Alexander, and Kenneth A. Brobst, Jr. (collectively Claimants) petition. for review of the twenty-three orders of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of benefits pursuant to the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751—914.

Nineteen of the Claimants (the Wehr Claimants) filed for unemployment compensation benefits with the Tamaqua Job Center (Job Center) for the weeks ending July 10, 1993, and July 17, 1993.[1] The Job Center denied benefits for the week ending July 10, 1993, and granted benefits for the week ending July 17, 1993. The Wehr Claimants appealed and following group hearings, the referee affirmed the Job Center's determinations. The referee issued one lead decision with findings of fact and conclusions of law in which Glenn Wehr was the named Claimant.

The referee made the following findings of fact:

1. For purposes of this appeal, the claimant is currently employed as a truck driver for Lehigh Coal and Navigation Company at a rate of pay of $12.93 per hour.

---

1. The claimants in those nineteen cases were Glenn Wehr, James Lawall, Raymond Kershetsky, John Collins, Luther Leitzel, Louis Horvath, Bruce Eberts, Thomas Moyer, Richard Gernert, Anthony Mongi, Joseph Zelinsky, Herman C. Osenback, Jr., Edward Nyseth, John Praskac, Larry Sabol, Thomas Porambo, Scott Konstas, Foster Alexander and Kenneth A. Brobst, Jr.

2. Under a collective bargaining agreement dated March 14, 1990, the period commencing July 5, 1993 up to and including July 18, 1993 was designated as a vacation period.

3. Pursuant to the collective bargaining agreement, the employer was required to notify the Union prior to January 1, 1993 if it desired to operate without interruption during the designated vacation period.

4. On December 30, 1992, the employer sent the President of District 2, United Mine Workers, a letter indicating it would perform maintenance repair work during the 1993 scheduled vacation period. The employer also requested the Union's approval to operate certain production equipment in specified areas should the need arise to load clean coal from the plant.

5. It was consistent with past practice of the employer to perform maintenance and repair work during the specified vacation period.

6. The employer posted a work schedule on June 21, 1993 which identified the week of July 5, 1993 through July 18, 1993 as vacation period.

7. The claimant was aware that his recall date would be July 19, 1993.

8. The claimant returned to work on July 19, 1993 per recall.

9. The claimant did not work during the vacation period commencing July 5, 1993 through July 18, 1993.

10. The claimant was working normal work schedule prior to commencement of the vacation period on July 5, 1993.

11. The claimant was available for work during the vacation period and so indicated to the employer by placing his name on a list required by the employer.

12. The claimant is a member of Local 4004 of the United Mine Workers, a Local entirely separate from United Mine Workers Local 1571 which also performs work for Lehigh Coal and Navigation.

13. The claimant received the amount of $484.17 on or about December 20, 1992, an amount equal to seven credits of vacation pay.

14. The claimant received the amount of $345.83 on or about June 20, 1993, an amount equal to five credits for purposes of vacation pay.

15. The claimant's normal full-time weekly wage is calculated to be $485 per week.

Referee's Decision, October 7, 1993, Findings of Fact (F.F.) Nos. 1–15 at 1–2.

The Wehr case served as the lead decision for the other eighteen claimants:

AND NOW this 7TH day of October, 1993 it appearing that the issues raised, and the facts involved in the above captioned case are substantially the same as those involved in the claim of *GLENN·B. WEHR* ... and it further appearing that the said decision of the Referee is controlling and determinative of the case ... [t]he decision of the Office of Employment Security is AFFIRMED.

Referee's Decisions, October 7, 1993.[2] The Wehr Claimants appealed and by nineteen separate orders dated August 17, 1995, the Board affirmed concluding that the referee's decisions were in accordance with the Law.

Four Claimants (the Praskac Claimants) filed for unemployment compensation benefits with the Job Center for weeks in July of 1994.[3] The Job Center denied benefits pursuant to Sections 401 and 404(d). The claimants appealed and following a group hearing a referee affirmed the Job Center's determinations in the lead decision, the Praskac case. The referee made the following findings· of fact:

1. For purposes of this appeal, the claimant is currently employed by Lehigh Coal and Navigation Company at a rate of pay of $13.67 per hour.

**2.** We note that two of the Wehr Claimants, Foster Alexander and Kenneth A. Brobst, Jr., received referee decisions containing essentially the same findings and conclusions as set forth in the Wehr case rather than the above-cited order so that the referee could address the issue of the timeliness of their appeals.

**3.** The claimants in those four orders were John S. Praskac, Blair T. Kranch, Tommy J. Vadyak and Micheal D. Chromiak.

2. Under a collective bargaining agreement,[4] the period commencing July 4, 1994, up to and including July 17, 1994, was designated by the employer as a vacation period.

3. Pursuant to the collective bargaining agreement, the employer was required to notify the union prior to January 1, 1994 if it desired to operate without interruption during the designated vacation period.

4. On December 8, 1993, the employer sent the President of District 2, United Mine Workers, a letter indicating it would perform maintenance work during the 1994 scheduled vacation period. The employer also requested the union's approval to operate certain production equipment in specified areas should the need arise to load clean coal from the plant.

5. It is consistent with past practice of the employer to perform maintenance and repair work during the specified vacation period.

6. The employer posted a work schedule which identified the week of July 4, 1994 through July 7, 1994 as vacation period.

7. The claimant was aware that his return-to-work date would be July 18, 1994.

8. The claimant requested and had deferred the payment of his vacation pay to a later day.

9. The claimant was working normal work schedule prior to the commencement of the vacation period on July 4, 1994.

10. The claimant was available for work during the vacation period.

11. The claimant was entitled to receive the amount of $1,093.60 on June 30, 1994 as vacation pay.

Referee's Decision, September 8, 1994, F.F. Nos. 1–11 at 1–2.

Like the Wehr decision, the Praskac decision served as a lead decision for the remaining claimants:

AND NOW his *12th* day of *September 1994*, it appearing that the issues raised, and the facts involved, in the above captioned case, are substantially the same as those involved in the claim *John S. Praskac, Appeal No. 94–8–h–127;* and it further appearing that the said decision of the Referee is controlling and determinative of the case ... [t]he decision of the Office of Employment Security is AFFIRMED.

Referee's Decisions, September 12, 1994. The Praskac Claimants appealed and by four separate orders dated August 15, 1995, the Board affirmed based on the referee's determination.

Both the Wehr Claimants and the Praskac Claimants then filed a *single* petition for review of the Board's *twenty-three* orders with this Court alleging that the Board committed an error of law in concluding work was available to Claimants during the relevant periods and that the denial of benefits was not supported by substantial evidence. The Board filed a motion to quash the petition. By order dated January 4, 1996, this Court denied the Board's motion. The Board then filed an application for reargument before this Court en banc. We denied reargument before the Court en banc, but granted reargument of the motion before this three-judge panel along with the merits.[5]

■ We must first address the Board's motion to quash. The Board argues there were no compelling circumstances to facilitate a single appeal from multiple orders. This Court, sitting en banc, recently considered the issue of single appeals from multiple Board orders in *Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24 (Pa.Cmwlth.1995).

In *Croft*, nine claimants working for the same employer were denied unemployment compensation benefits first by the Cumberland Valley Job Center, then by a referee

---

4. Although this collective bargaining agreement is not the exact agreement that was relevant in the Wehr case, it is essentially the same with regard to the vacation/shutdown provisions. A copy of the collective bargaining agreement is provided in the record.

5. This court's scope of review in unemployment compensation cases is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Rossi v. Unemployment Compensation Board of Review*, 675 A.2d 390 (Pa.Cmwlth.1996).

and ultimately by the Board. The claimants filed a single appeal with this Court from nine separate Board orders. The factual scenario presented by each claimant was virtually identical as were the Board's nine opinions and the issues raised by the claimants as to all nine orders. We noted that quashing the appeal would have precluded review because the appeal period had expired. In our majority opinion the Honorable Doris A. Smith cited *Van Duser v. Unemployment Compensation Board of Review,* 164 Pa.Cmwlth. 96, 642 A.2d 544 (1994), for the observation that, despite discouraging the practice, Pennsylvania appellate courts have been reluctant to quash single appeals from multiple orders. The majority also cited *General Electric Credit Corp. v. Aetna Casualty & Surety Co.,* 437 Pa. 463, 263 A.2d 448 (1970), a seminal case on this issue, for the proposition that a variety of circumstances should be considered to determine whether to quash a single appeal from multiple orders, and that no one factor is dispositive. The majority denied the Board's motion to quash and reviewed the appeals of all nine claimants, but added that "the practice of filing one appeal from multiple orders is strongly disapproved and in the future, the Court will quash single appeals from multiple orders unless otherwise dictated by compelling circumstances." *Croft* at 28.

In the present matter, the Board wrote twenty-three separate orders; ordinarily this requires twenty-three individual petitions for review. However, here, as in *Croft,* the Board's opinions and the facts presented by each claimant were virtually identical. The issue was the same in all twenty-three cases: whether the Claimants were eligible for benefits during the annual July shutdown of Lehigh Coal. Another persuasive factor in *Croft,* which is present here, is that quashing will preclude Claimants from obtaining review because the appeal period for the August 1995, orders has long since expired. Unlike *Croft,* but weighing in Claimants favor, is that the claims were consolidated into two group proceedings before the referee

who identified two representative Claimants. The circumstances here are similar if not indistinguishable from those that we found "compelling" in *Croft.* We will not quash the present appeal. Although *Croft* was a warning shot fired to alert practitioners and claimants of the necessity to take the appropriate steps to seek consolidation of orders prior to filing appeals with this Court, we did not unequivocally state that all future appeals from multiple orders must be quashed.

■ We now turn to the merits. Claimants contend that they were eligible for benefits during the annual July shutdown of Lehigh Coal.[6] The primary issue raised by Claimants is whether the Board erred in concluding that Lehigh Coal properly designated the weeks in July 1993 and July 1994 as vacation periods. Two provisions of the Law are germane here, Section 4(u), 43 P.S. § 753(u), and Section 404(d)(1)(ii), 43 P.S. § 804(d)(1)(ii).

Section 4(u) of the Law provides in pertinent part:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

Notwithstanding any other provisions of this act, an employee who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance.

---

6. We disagree with the Board's contention that the issues raised in Claimants' brief were not preserved in their petition for review. After careful scrutiny, we conclude that the subsidiary arguments set forth in Claimants' brief were properly preserved in the petition for review and were "fairly comprised therein" in accordance with Pa.R.A.P. 1513(a).

Section 404(d)(1)(ii) of the Law provides in pertinent part:

Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefits rate less the total of ... vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employee who is permanently or indefinitely separated from his employment.

 It has long been held that when an employer allocates vacation pay to a period of time the period must be *properly designated* as vacation. *Piestrak Unemployment Compensation Case*, 404 Pa. 527, 172 A.2d 807 (1961). Where an employer allocates vacation pay to a period which is not designated as vacation, that pay will not disqualify claimants from receiving benefits if the claimants are otherwise eligible. *Eckenrode v. Unemployment Compensation Board of Review*, 37 Pa.Cmwlth. 458, 390 A.2d 886 (1978).

Claimants contend that Lehigh Coal had no authority under the collective bargaining agreement to designate vacation periods for its employees after sending notices to the Claimants' union that it planned to operate during scheduled shutdown periods. In reviewing vacation pay cases in the unemployment compensation context we must study both the controlling collective bargaining agreement as well as the relevant provisions of the Law. *Appel v. Unemployment Compensation Board of Review*, 124 Pa.Cmwlth. 632, 556 A.2d 973 (1986).

Claimants cite *Iceland Products v. Unemployment Compensation Board of Review*, 89 Pa.Cmwlth. 251, 492 A.2d 457 (1985), in support of the proposition that the issue of whether an employer was permitted to designate a shutdown period as vacation for employees turns on the terms of the effective collective bargaining agreement. In *Iceland*

*Products,* the employer attempted to allocate vacation pay to a shutdown period. We concluded that the collective bargaining agreement permitted employees to schedule vacation throughout the year and therefore, the employer did not have authority to unilaterally designate the shutdown period as the employees' vacation time.

This Court considered a similar issue in *Dennis v. Unemployment Compensation Board of Review*, 55 Pa.Cmwlth. 215, 423 A.2d 458 (1980). In *Dennis*, the employees had received vacation pay early in the year, but pursuant to a provision in the collective bargaining agreement they intended not to take any vacation time for that year. These employees were later informed by the employer that they could not work due to a scheduled two week shutdown period. The employer attempted to apply the previous vacation pay as remuneration for the shutdown period. We determined that the shutdown period was not properly designated as a vacation period under the terms of the collective bargaining agreement which required communication between the employer and the employees concerning vacation arrangements prior to the scheduled vacation period. This Court was strongly persuaded by the fact that rather than having been excused from work, the employees were simply not scheduled for work and that the employees actually wanted to work during the shutdown period.

In the present controversy, the collective bargaining agreement provided that the first two weeks of each July were scheduled vacation periods for all Lehigh Coal employees unless Lehigh Coal elected to operate without interruption during those intervals. In the event that Lehigh Coal intended to operate during the vacation periods the collective bargaining agreement required that Lehigh Coal notify the employees' union then the employees would be permitted to take vacations at different times throughout the year.[7]

---

7. Article thirteen of the collective bargaining agreement, provides in pertinent part:

**Article 13—VACATION**

*Section (a)* **Annual Vacation**

An annual vacation of the 14 calendar days shall be the rule of the industry.

*Section (b)* **Dates of Vacation Period**

In each year of this Agreement, the vacation period will begin at the start of the day shift on the first Monday in July and end at the beginning of the day shift on the third Monday in July.

In accordance with the terms of the collective bargaining agreement, Lehigh Coal notified the union that it would perform maintenance and repair work during the vacation periods and further informed the union that it planned "to operate certain production equipment in the jurisdiction of Local 4004" if warranted during the scheduled vacation periods in both 1993 and 1994.[8] As a result of these notices, because the Claimants were members of Local 4004 and faced the possibility of being called for work they made themselves available during the vacation periods. *See* Referee's Decision, October 7, 1993, F.F. No. 11 at 2; Referee's Decision, September 8, 1994, F.F. No. 10 at 2.[9]

We agree with the referee's findings that pursuant to the collective bargaining agreement the first and second weeks of July were designated vacation periods. We disagree with the referee's and Lehigh Coal's interpretation of the vacation provisions of the collective bargaining agreement. Lehigh Coal's notification that it intended to continue operation triggered the staggered vacation provisions of the collective bargaining agreement for these Claimants. Based on the notification sent by Lehigh Coal to the union, the Claimants acted reasonably in making themselves available for work during the shutdown periods and properly scheduled separate vacations.

Reversed.

*Section (c)* **Staggered Vacation**
(1) To further assure a continued supply of coal and extend employment opportunities, any Employer may, irrespective of past practice to the contrary, operate his/her mine without interruption and schedule vacations of 14 calendar days for each Miner at his/her mine during the calendar year. In the event the Employer elects to operate his/her mine without interruption, he/she must file a written declaration with the President of the UMWA District 25 by January 1.
(2) Should the Employer elect to operate his mine without interruption, vacation periods shall be scheduled by the Employer at the times desired by individual Miners so long as this will not interfere with efficient operations as determined by the Employer, and so long as not more than 15 percent of the work force at a mine elects to be off on the same day.
Lehigh Coal and Navigation Wage Agreement of 1990, March 14, 1990, Certified Record Item No. 8.

## ORDER

AND NOW, this 23rd day of September, 1996, the motion to quash of the Unemployment Compensation Board of Review (Board) is denied and the Board's orders referenced by the above-captioned matter are reversed and the cases are remanded to the Board for computation of benefits consistent with the foregoing opinion. Jurisdiction relinquished.

PELLEGRINI, Judge, concurring and dissenting.

I respectfully dissent from the majority's denial of the Board's motion to quash and their allowance of the appeal of the 23 Claimants to proceed before this court as a single appeal. Though I agree that the Board's motion to quash should not have been granted, I would not allow the appeal to proceed as a single appeal.

Before us is a single petition for review filed on behalf of 23 separate Claimants from 23 separate orders of the Unemployment Compensation Board of Review (Board). Though the issues raised by each Claimant are essentially identical, as are the findings of fact found by the Referee, upon the Claimants' appeals to the Board, the Board issued 23 separate orders. Without bringing a formal motion for consolidation before this

8. Lehigh Coal sent a letter dated December 30, 1992, to the president of the Claimants' union stating as follows:

This is to inform you, as the President of U.M.W.A. District 2, that the Tamaqua operation of Lehigh Coal & Navigation Company will perform maintenance repair work during the 1993 scheduled Miners Vacation period. Further, we will operate certain production equipment in the jurisdiction of Local 4004 and load clean coal with Local 1571 employees should the situation and business conditions warrant these types of operations.

A similar letter was sent to the union regarding the 1994 shutdown period. As stated in the referee's findings the Claimants are members of Local 4004. *See* Referee's Decision, October 7, 1993, F.F. No. 12 at 2.

9. The fact that Claimants did not work during the vacation periods is immaterial.

court,[1] Claimants filed a single petition for review from the 23 separate orders of the Board, alleging that the Board committed errors of law, and that its denial of Claimants' unemployment compensation benefits was not supported by substantial evidence.

The majority follows the rationale of *Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24 (Pa.Cmwlth.1995). In that case, this court permitted the nine claimants' single appeal from multiple orders to proceed, while warning that such practice is highly disapproved, and that, in the future, single appeals from multiple orders should be quashed "unless otherwise dictated by compelling circumstances." Likewise, the majority here finds the circumstances similarly compelling, i.e., the expiration of the statutory appeal period and the identity of issues and facts of each case, along with the fact that the Referees had consolidated the 23 Claimants below into two groups, designating a representative Claimant for each, the majority determined that compelling circumstances do exist and refused to quash Claimants' single appeal.

For the same reasons that I dissented in *Croft*, I dissent here. Just as in *Croft*, the majority reiterates the rule that a single appeal cannot be taken from multiple orders, warns that such rule is to be followed, but then conversely permits a single appeal from multiple orders to be taken, is internally inconsistent and does nothing to discourage the practice. As I pointed out in *Croft*, a single appeal from multiple orders is not authorized by the Pennsylvania Rules of Appellate Procedure. To the contrary, the concept of a separate appeal from a separate order is at the core of the Pennsylvania Rules of Appellate Procedure, as the entry of an order determines how, when and who can appeal.[2]

Even though their appeals were improper, Rule 1511 of the Pennsylvania Rules of Appellate Procedure [3] gives us the discretion to preserve the filing date and require the Claimants to take the appropriate measures to perfect their appeals. Rather than allow the Claimants to proceed on their single appeal and reach the merits of their cases, I would enter an order giving Claimants 30 days to file separate appeals or their appeals would be dismissed. By issuing such an order, Claimants are not denied the opportunity to litigate their appeals on the merits, but are forced into compliance with the rule that a single appeal must be taken from each separate order.

1. Though the Claimants, prior to their appeal to this court, made no formal motion to consolidate, a Referee considered 19 of Claimants' claims at one time, designating one Claimant as representative Claimant, and a Referee considered 4 of Claimants' claims at another time, again designating one Claimant as representative Claimant.

2. For example: Pa.R.A.P. 301 provides, "[n]o order shall be appealable until it has been entered upon the appropriate docket in the lower court." Subsection (b) goes on to provide "every order shall be set forth in a separate docket"; Pa.R.A.P. 341 provides, "an appeal may be taken as of right from any final order of an administrative agency"; Pa.R.A.P. 501 provides, "any party who is aggrieved by an appealable order, may appeal therefrom"; Pa.R.A.P. 903 provides that "the notice of appeal ... shall be filed within 30 days of the entry of the order from which the appeal is taken." Because this is an appeal from an administrative agency, the matter is governed by the confusing Chapter 15 which governs both appeals to this court as well as actions to our original jurisdiction. Pa.R.A.P provides that the "petition for review of a quasi judicial order ... shall be filed with the prothonotary of the appellate court ..."

3. Pa.R.A.P. § 1511 provides:
 Review under this chapter shall be obtained by filing a petition for review with the prothonotary of the appellate court within the time allowed by Rule 1512 (time for petitioning for review). Failure of a petitioner for review to take any step other than the timely filing of a petition for review does not affect the validity of the review proceeding, but is grounds only for such action as the appellate court deems appropriate, which may include dismissal of the review proceeding.