Paul E. BARAN, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.

Jeannette P. Purcell, Petitioner,

v.

Unemployment Compensation Board of Review, Respondent.

Richard D. Gray, Sr., Petitioner,

v.

Unemployment Compensation Board of Review, Respondent.

Gary C. Watsula, Petitioner,

v.

Unemployment Compensation Board of Review, Respondent.

Ronald Sadler, Petitioner,

v.

Unemployment Compensation Board of Review, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 1999.

Decided Oct. 25, 1999.

Richard E. Gordon, Pittsburgh, for petitioners.

Mark A. Fontana, Harrisburg, for intervenor, Corning Consumer Products.

Before COLINS, J., KELLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Paul E. Baran, representative claimant, Jeannette Purcell, alternate representative, Richard Gray, Gary Watsula, and Ronald Sadler (collectively, Claimants)[1] petition for review from five orders of the Unemployment Compensation Board of Review, dated December 29, 1998, that affirmed the referee's denial of unemployment compensation benefits for the weeks ending July 11 and July 18, 1998 pursuant to Sections 4(u) and 404(d)(1)(ii) of the Unemployment Compensation Law (Law).[2] We affirm.

Claimants are employed by Corning Consumer Products (Employer). On January 21, 1998, Employer met with union representatives[3] to inform them, *inter alia*, that it was instituting a plant-wide vacation shutdown from June 28 through July 18, 1998 and that employees must use vacation time during that period.[4] Shortly thereafter, Employer also informed the union that it would honor all vacation requests outside the scheduled shutdown that were submitted prior to January 21, 1998, without regard to seniority. After January 21, 1998, Employer would not approve vacation requests outside the shutdown period where the employees did not receive prior approval or did not have vacation time scheduled during the shutdown period.[5]

In June of 1998, Claimants filed for unemployment compensation benefits. The Charleroi Job Center disapproved Claimants' applications, concluding that because Claimants received payment from Employer's vacation fund in excess of the partial benefit credit, they were not entitled to benefits for the applicable period.

Claimants appealed to the referee. After a hearing on the merits, the referee made the following findings of fact:[6]

1. The claimant was last employed by Corning Consumer Products until June 27, 1998, his last day of work.

2. The claimant has received a vacation payment from the employer's vacation

---

1. From the record before us, it would appear that Misters Gray, Watsula and Sadler have filed independent appeals from the Board's decisions. However, we note that they did not appear before the referee for their respective hearings. At the designated time for the hearings, counsel for the representative class stated that he did not represent Misters Gray, Watsula and Sadler in their independent appeals and that he could not comment on whether the hearing transcript from the class appeal should be incorporated into the independent appeals. Misters Gray, Watsula and Sadler have not filed separate appellate briefs with this Court.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 753(u), 804(d)(1)(ii).

3. Claimants are members of the Aluminum, Brick and Glass Workers International Union, AFL–CIO, CLC, Local No. 53.

4. If an employee was entitled to one week of vacation, Employer did not require that the employee's vacation be scheduled during the shutdown; if an employee was entitled to two weeks of vacation, Employer required that one of the two weeks of vacation be scheduled during the shutdown; if an employee was entitled to three or more weeks of vacation, Employer required that two weeks of vacation be scheduled during the shutdown.

5. If an employee was entitled to three or more weeks of vacation, Employer would approve a vacation request if the employee scheduled two weeks of vacation during the shutdown period. If an employee failed to schedule vacation during the shutdown, Employer would unilaterally schedule the employee's vacation during that time period.

6. The referee made identical findings of facts in the appeals of Ms. Purcell and Misters Gray, Watsula and Sadler.

fund attributable to the compensable weeks in issue.

3. The unemployment period herein was not a permanent or indefinite furlough from work and claimant at all times material herein had a recall to work date of July 19, 1998.

4. The employer designated the period June 28, 1998 through July 18, 1998 as a vacation period for the entire production staff and the employer instituted for the period herein a plant shutdown.

5. There exists a collective bargaining agreement [CBA] (contract) between the employer and Aluminum Brick & Glass Workers International Union (union) which was in effect at the time material herein and which controlled the terms and conditions of employment.

6. Article 21 of the contract provides:

"Section 4. Any vacation not completed during a calendar year cannot be carried over to the next year. Vacations will, so far as possible, be granted at times most desired by employees, but the final right to allotment of vacation period is preserved by the Company so that orderly operations of the plant may be insured."

7. On January 21, 1998, the employer met with representatives of the union and so informed the union that the employer was instituting a plant shutdown from June 28, 1998 through July 18, 1998 and that certain employees must use their vacation allotments during said period.

8. On January 21, 1998, the employer advised the union that the employer would honor vacation requests for vacation days outside the plant vacation shutdown period imposed herein where made by said employees and approved by the employer prior to January 21, 1998 without regard to seniority of the individuals involved.

9. On January 22, 1998, the employer disapproved vacations outside the plant shutdown period which requests had not received said prior approval of the em-ployer without regard to seniority of the individuals involved.

10. There was no production during the plant shutdown period. The employer made a determination that it was more efficient to shut down completely and resume at full operation, rather than operate partially during the period herein.

11. No employee involved in the plant shutdown herein was offered a voluntary layoff during the plant shutdown period.

12. The employer imposed a plant shutdown in 1993 and required its employees to take vacation during the shutdown period under Article 21, Section 4 of the contract which is identical to the [sic] Article 21, Section 4 of the contract currently in effect.

13. The employer, in imposing a plant shutdown and vacation period herein, did not violate any past practices.

(Findings of Fact Nos. 1–13).

Relying on this Court's decision in *Appel v. Unemployment Compensation Board of Review*, 124 Pa.Cmwlth. 632, 556 A.2d 973 (1989), the referee concluded that Employer had the authority under the CBA to declare the plant shutdown as a vacation period and that therefore, Claimants' vacation pay was deductible from their weekly benefit rates. Accordingly, the referee affirmed the Job Center's determination and denied benefits for the weeks ending July 11 and July 18, 1998. As in the case *sub judice*, the CBA in *Appel* contained language that reserved to the employer the final right to determine the allotment of vacation periods in order to ensure orderly operation of the facility. We agree that the referee's reliance on our decision in *Appel* was proper.

■ On appeal, the Board affirmed the referee's determination. Claimants now seek review in this Court, arguing that Employer improperly designated the shut-

down period as vacation time.[7] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *Dingbat's v. Unemployment Compensation Board of Review,* 123 Pa.Cmwlth. 73, 552 A.2d 1157 (1989).

In reviewing vacation pay cases in the unemployment compensation context, the Court must study both the CBA as well as the relevant provisions of the Law. *Appel.* Section 4(u) of the Law, 43 P.S. § 753(u), provides in pertinent part:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance.

Section 404(d)(1)(ii) of the Law, 43 P.S. § 804(d)(1)(ii), provides in pertinent part:

Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of ...

(ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment.

■ Initially, Claimants bear the burden of proving eligibility for unemployment compensation benefits and therefore, must establish that Employer improperly designated the shutdown period as vacation time and that Claimants were unemployed during the shutdown period. *Iceland Prods. v. Unemployment Compensation Board of Review,* 89 Pa. Cmwlth. 251, 492 A.2d 457 (1985). Where an employer allocates vacation pay to a period that is not designated as vacation, that pay will not disqualify claimants from receiving benefits if the claimants are otherwise eligible. *Eckenrode v. Unemployment Compensation Board of Review,* 37 Pa.Cmwlth. 458, 390 A.2d 886 (1978).

■ Claimants contend that the Board erred as a matter of law in concluding that Employer properly allocated vacation pay to the shutdown period. In support of their position, Claimants cite *Praskac v. Unemployment Compensation Board of Review,* 683 A.2d 329 (Pa.Cmwlth.1996), *appeal denied,* 548 Pa. 641, 694 A.2d 625 (1997), *Dennis v. Unemployment Compensation Board of Review,* 55 Pa.Cmwlth. 215, 423 A.2d 458 (1980), and *Iceland Prods.* We find these cases to be distinguishable.

In *Praskac,* the parties' CBA provided that the first two weeks of July were scheduled vacation periods for all employees unless the employer elected to operate during vacation periods. In that event, the CBA required that the employees affected by the employer's decision to operate be able to take vacation at different times throughout the year.

The employer in *Praskac* notified the union that, during the shutdown, it intended to perform maintenance and repair work and planned to operate certain pro-

---

7. By orders dated March 8 and April 5, 1999, we consolidated the petitions for review.

duction equipment. As a result, the claimants were faced with the possibility of being called into work. On appeal, this Court held that since the employer notified the union that it intended to operate during the shutdown period, the terms of the CBA were triggered and thus, the claimants had to be available to work. As such, the claimants were entitled to receive unemployment benefits.

In *Dennis,* the employer notified its employees that it was instituting a plant shutdown for two weeks. Testimony established that nearly one-half of the employees worked maintenance during the shutdown and that the employees were not notified until the Friday before the shutdown began that they were not scheduled to work. Each of the employees had received varying amounts of vacation pay throughout the year, but had not taken vacation time. In light of the fact that the employees had elected not to take vacation, the employer allocated the pay received earlier in the year to the plant shutdown period in an attempt to disqualify the employees from unemployment benefits.

The *Dennis* Court defined "vacation" as "that period of time when an employe who otherwise would have been required to work was excused from working." *Id.,* 423 A.2d at 461. The record established that the employer did not discuss vacation arrangements with the employees in advance of the shutdown. The record further established that the employer specifically informed the employees that the shutdown was not available for vacation scheduling unless special permission was granted. Based upon these factors, the Court concluded that the employees were not *excused* from working, but rather were not *scheduled* to work. Accordingly, the Court determined that the shutdown was not for vacation purposes and that the employer's unilateral allocation of past vacation pay to the shutdown period was improper.[8]

Finally, in *Iceland Prods.,* the employer reserved the right under the CBA to annually shut down all or part of the plant for up to two weeks for vacation purposes. In May of 1983, the employer notified its employees that it intended to exercise this option. Additionally, the employer informed its employees that they did not have to schedule their vacation during the shutdown, but if they had vacation days and elected not to use them, they would be ineligible for unemployment compensation for the two-week shutdown.

The employees that applied for and received unemployment benefits fell into one of three categories, including employees who had available vacation time but chose to save it for later use. The employer challenged the award of benefits to the latter employees.

On appeal, the Court concluded in *Iceland Prods.* that since vacations were expressly approved for times other than the general shutdown, the shutdown did not constitute the employees' vacation period. The Court then considered the parties' CBA and found its vacation policy to be ambiguous. Thus, the Court again concluded that because the employees were not excused from working, but rather were not scheduled to work, there was no "vacation period" as defined in *Dennis.*[9]

*Praskac, Dennis,* and *Iceland Prods.* are distinguishable from the case at bar. In each case, the employer granted its employees a vacation period outside the scheduled shutdown. Additionally, in *Dennis,* the employer retroactively allocated the shutdown period to vacation pay that the employees had previously received.

---

**8.** *Dennis* was remanded to the Board for specific findings of fact regarding the availability of *suitable* work for each employee during the time period involved.

**9.** As in *Dennis, Iceland Prods.* was remanded to the Board for specific findings of fact regarding the availability of suitable work for each employee during the time period involved.

Rather, we find that the facts of this case are more analogous to the facts in *Appel,* 124 Pa.Cmwlth. 632, 556 A.2d 973 (1989).

In *Appel,* the employer posted a notice of a vacation shutdown indicating that the plant would be shut down for a four-week period. A second notice provided the employees with details regarding vacation checks, regular paychecks, and extra work available during the shutdown. The plant shutdown occurred as scheduled.

As a direct result of the shutdown, the claimant filed for unemployment compensation benefits. The Office of Employment Security deemed the claimant ineligible for benefits because he was not indefinitely separated from work and the plant shutdown was properly designated as vacation time for the allocation of vacation pay. The referee and the Board affirmed.

On appeal to this Court, the *Appel* claimant alleged that the Board erred in concluding that the employer's shutdown was properly allocated as a vacation period. The claimant directed the Court to the language of the CBA, which is very similar to the language in the current CBA:

> Vacation will, as far as possible, be granted at times most desired by employees, between January 1 and December 31, but the final right to allotment of vacation period is exclusively reserved to the Company in order to ensure the orderly operation of the plant.

*Id.* at 976.

Upon review of the entire record, the *Appel* Court found that the employer had

authority to allocate the four-week period as vacation. The Court further noted that unlike the claimants in *Iceland Prods.* and *Dennis,* the *Appel* claimants had not been granted a separate vacation period in substitution, in whole or in part, for the general shutdown.

Given the similarities in the facts, issues and contractual language in the two cases, we conclude that *Appel* is controlling.[10] Accordingly, we affirm.[11]

### ORDER

AND NOW, this 25th day of October, 1999, it is hereby ordered that the orders of the Unemployment Compensation Board of Review dated December 29, 1998, are affirmed.

---

**10.** Additionally, Claimant Baran argues that Employer is in violation of the CBA because it approved vacation requests regardless of seniority and as a result, he was denied his desired vacation time while other, less senior employees were granted their requested vacation periods. However, this Court is not the proper forum in which to adjudicate an alleged violation of the CBA. *Appel,* 124 Pa. Cmwlth. 632, 556 A.2d 973.

**11.** We do not agree with Claimants' position that *Appel* is distinguishable because Corning Consumer Products is under new manage-

ment and because in *Appel,* the employer had a past practice of mandatory vacation time. The parties to the CBA are in privity of contract and therefore, Employer must abide by its terms. Moreover, the record supports Employer's position that it declared plant-wide vacation shutdowns in both 1991 and 1993. Notwithstanding that, however, Employer's frequency in declaring vacation shutdowns is not dispositive of the issue of whether it improperly designated the shutdown period at issue as vacation time.